[No. 28472. Department Two. October 25, 1941.]

*In the Matter of the Guardianship of* AGNES B. MIGNEREY, *an Incompetent Person.*

HENRY B. MIGNEREY *et al., Appellants,* v. THE PACIFIC NATIONAL BANK OF SEATTLE, *Respondent.*[1]

[1]Reported in 118 P. (2d) 440.

E. P. *Whiting* and *Teresa I. Masters,* for appellants.
*Mason Wheeler,* for respondent.

BEALS, J.—Henri J. and Agnes B. Mignerey were for many years husband and wife. They resided in the city of Seattle, where Mr. Mignerey was engaged in business as a produce merchant, also devoting considerable time to the management of several parcels of real estate. The couple had two children, Henry Bartlett Mignerey and Madeleine Wirta, Madeleine having married and having two daughters, the elder, Susanne Nevins, the younger an infant daughter by her second husband.

Mr. and Mrs. Mignerey occupied as a home one of the dwellings which they owned. For several years prior to 1941, Mrs. Mignerey's mind began to fail, and Mr. Mignerey employed Daisy Savery, a competent woman fifty years or so of age, to take care of Mrs. Mignerey and assist with the housework.

Henri J. Mignerey died February 22, 1941, leaving a will executed December 11, 1939, to which was attached a codicil executed January 27, 1941. The will and codicil were regularly admitted to probate February 25, 1941, and the appointment of The Pacific National Bank of Seattle as executor and trustee under the will was confirmed by the court. By his will, Mr. Mignerey bequeathed the sum of five hundred dollars to Daisy Savery, devising the remainder of the estate, outside of another legacy, to the bank in trust, first, for the support of Mr. Mignerey's wife, Agnes B. Mignerey, during her lifetime, the balance of the estate remaining at her death to go to Mr. Mignerey's son Henry, his daughter Madeleine, and his grand-

daughter Susanne Nevins, in equal shares. The will contained a paragraph as follows:

"I am mindful of the physical and mental decline of my wife Agnes B. Mignerey and direct that as occasion therefor arises that my trustee and executor, The Pacific National Bank, be appointed guardian of the property of my said wife and of the property of my granddaughter Susanne Nevins until she shall attain the age of 21."

In due time the entire community estate was appraised at something over seventy-five thousand dollars. It has a net value of approximately sixty thousand dollars.

For many years prior to Mr. Mignerey's death, his son, Henry Bartlett Mignerey, who is known as "Bart," was employed by his father in connection with the operation of the produce business; and the bank, as executor and trustee under the will, has continued to operate that business, leaving the son in charge thereof.

April 9, 1941, an order was entered in the estate, providing for an annual allowance in the sum of twenty-four hundred dollars for the support and maintenance of the widow, Agnes B. Mignerey, during the course of administration of the estate. The bank continued to employ Mrs. Savery to care for Mrs. Mignerey, in her home. It is agreed by all persons concerned that, while Mrs. Mignerey is physically well and strong for her age of seventy-seven years, her mind has progressively failed, and that, at the time of her husband's death, her mental condition was such that the appointment of a guardian for her person and estate was then, and continues to be, necessary.

April 18, 1941, Mrs. Mignerey's son and daughter, Bart and Madeleine, jointly petitioned the court for the appointment of Bart as guardian of the person and estate of their mother. The bank appeared in the guardianship proceeding, opened by the filing of the

petition above referred to, and answered the petition of the children, setting forth the death of Mr. Mignerey, senior, the admission of his will to probate, the appointment of the bank as executor and trustee under the will, the inclusion in the will of the paragraph above quoted, and pleading the second paragraph of the codicil to Mr. Mignerey's will, reading as follows:

"I give and bequeath $500 outright to Daisy Savery, who for some time past has been employed in my household in the care particularly of my wife, Agnes B. Mignerey, and commend her further employment at a reasonable compensation in such capacity to my executor and trustee, The Pacific National Bank of Seattle, in case I die before my said wife Agnes B. Mignerey, and it becomes incumbent upon my said trustee to provide for the continued care of my said wife after my death."

The bank by its answer took the position that, under the circumstances, the appointment of a general guardian for Agnes B. Mignerey was unnecessary, because she was now being cared for by the executor and trustee under her late husband's will. As an alternative, the bank suggested that, if the court deemed it necessary and proper to appoint a guardian for Mrs. Mignerey, the bank be appointed, or that some member of the bar, not concerned with the proceedings, be named.

The petitioners moved to strike from the answer and demurred thereto, their motion being denied and the demurrer overruled. They then replied to the affirmative matter contained in the bank's answer, denying certain allegations thereof and alleging certain new facts.

The issues having been completed, the matter was tried, evidence introduced, and the questions to be determined submitted to the court. The court refused to appoint Henry B. Mignerey as guardian of his

mother's person and estate, and appointed Samuel J. Neterer, a banker residing in the city of Seattle, as guardian of the person and estate of Agnes B. Mignerey. From this order the petitioners have appealed, assigning error upon the ruling of the court permitting The Pacific National Bank of Seattle to file its answer and petition in the guardianship proceeding and be heard thereon; on the ruling of the trial court overruling their demurrer and denying their motion to strike the bank's answer and cross-petition; upon the refusal of the court to appoint Henry B. Mignerey as his mother's guardian; and upon the order entered by the court appointing Samuel J. Neterer as such guardian.

The trial court properly permitted the bank's answer to appellants' petition to stand. As executor of Mr. Mignerey's will and as trustee thereunder, the bank should be entitled to appear in the guardianship proceeding and participate in the hearing on appellants' petition. In any event, in such a proceeding the trial court may, in the exercise of its discretion, hear anyone who appears to be able to throw any light upon such a situation as is presented by a petition for the appointment of a guardian for an incompetent. While a party having no direct interest in the proceeding has no absolute right to be heard, the trial court, of course, may, in an endeavor to ascertain all relevant and material facts, hear anyone who is apparently able to assist the court in so determining the matter as to best conserve the interests of the person for whom a guardian is to be appointed.

The case of *Hutteball v. Montgomery,* 187 Wash. 407, 60 P. (2d) 80, cited by appellants in this connection, is not in point, as that concerned an attempted intervention in a civil action for damages.

Upon the merits, the trial court faced a difficult

problem. While it clearly appears from the record that Mr. Mignerey, senior, was, for some reasons not clearly disclosed, not altogether satisfied with his children, his son was associated with the father in the latter's business, and he left his property to his children and a granddaughter, to be delivered after Mrs. Mignerey's death. Three businessmen testified that they were well acquainted with Bart Mignerey, and had had business relations with him for years. They stated without hesitation that he was a good businessman, honest and honorable in his dealings with his associates. On the other hand, the father named the bank as his executor and trustee, and from the paragraph of his will above quoted, evidently desired that the bank act as guardian of his wife and as trustee for his granddaughter. A husband has no statutory authority for naming a testamentary guardian for his incompetent wife, but the wishes of the testator as expressed are entitled to consideration.

Mrs. Daisy Savery has had considerable experience in caring for persons laboring under some mental disability. She was first employed by Mr. Mignerey to care for his wife about two and one-half years prior to Mr. Mignerey's death. While her service was not continuous, she had been with the family for some time prior to Mr. Mignerey's decease. After being appointed executor, the bank continued to employ Mrs. Savery to care for Mrs. Mignerey. It is, of course, clear that, at the time of the execution by Mr. Mignery of the codicil to his will, he had a high regard for Mrs. Savery, and desired that she continue to care for Mrs. Mignerey. Some testimony was introduced to the effect that on one occasion, after the execution of this codicil, Mr. Mignerey expressed dissatisfaction with Mrs. Savery, and talked of revoking the codicil. However, he continued to employ Mrs. Savery and did

not revoke the codicil, and it stands as a solemn expression of his appreciation of Mrs. Savery's services, and as his desire that she continue to care for his wife.

It is not altogether unnatural that some ill feeling should have grown up between appellants and Mrs. Savery. No good end would be attained by discussing the rather petty incidents which appear to have contributed to bring about this situation. It is sufficient to say that, if either of appellants should be appointed guardian for their mother, it is probable that Mrs. Savery's employment would not long continue. This, of course, is not by any means a determining factor in the case, but is an element to be considered together with other facts shown. The record contains nothing which even indicates that Mrs. Savery has not at all times taken excellent care of Mrs. Mignerey, has made her as happy and comfortable as possible, and that the best feeling exists between the two women. On the other hand, the record indicates that the relation between Mrs. Mignerey and her children was not particularly close. Mr. Mignerey evidently realized that he might well die before his wife, and he devoted considerable thought to her welfare in an endeavor to provide for her comfort and happiness.

In their brief, appellants call attention to the fact that they are their mother's apparent heirs, and that they are interested with her in the estate of their father, thus being interested in the property and in conserving the same. This is true, but in such a case as this the argument is entitled to little consideration.

Appellants cite many texts and cases to the effect that a court, in appointing a guardian for an incompetent, is required to exercise a sound judicial discretion, and that, as a general rule, relatives of the incompetent should be appointed rather than a stranger. Woerner's American Law of Guardianship, §§ 32, 133.

Of course, courts always recognize the strength of ties of close blood relationship.

Appellants cite several authorities in which the refusal of the court to appoint a near relative as guardian has been by appellate courts held error. *In re Wood,* 110 Wash. 630, 188 Pac. 787, this court reversed an order of the superior court denying the petition of a wife for appointment as guardian of her incompetent husband and appointing a stranger. In the course of the opinion, we said:

"Our statutes relating to guardianship of property of mentally incompetent persons do not specify who shall be entitled to such guardianship, so we shall assume for present purposes that the question of who shall be guardian in such cases rests in the discretion of the superior court. This discretion, however, must be exercised in the light of the nature of the property to be managed by the guardian, the relationship of the applicant to the incompetent person, and the interest the applicant has, if any, with the incompetent person in the property. Now to appoint a stranger guardian in this case is to appoint a guardian of property in which Mrs. Wood has a right and interest equal with Mr. Wood. Not only that, the property is not capable of being partitioned between them while the marital relation exists, so that she can acquire the independent control over her portion thereof. Good conscience and equity plainly dictate that the courts should be very slow indeed to withhold from the wife, in a case of this kind, control of community property. . . . Those close to the incompetent by ties of marriage or blood have always been favored by the courts as suitable and proper guardians in such cases. Woerner, American Law of Guardianship, § 133."

The welfare of incompetent persons and the care of their property are objects of particular care and attention on the part of the courts. In appointing a guardian, the trial court is called upon to exercise a wide discretion, and the conclusion of the court carries great

weight when its action is reviewed before an appellate tribunal.  In the *Wood* case, the property belonged to the community, in which the wife had an actual present interest, equal to that of her incompetent husband.  The appointment of a stranger as custodian of the community estate would deprive the wife of the control of her own property.  It appeared that the wife was perfectly capable of acting as guardian, and that for several years she had been managing the property.  This court held that the trial court had erred in appointing a stranger.  Here, appellants have no present interest in their mother's property, and only an interest as remaindermen in their father's estate.

This court, *In re Martenson,* 77 Wash. 36, 137 Pac. 340, affirmed an order of the superior court appointing a stranger in preference to a brother, as guardian of an insane person.

In 4 Bancroft's Probate Practice 2053, § 1277, the general rule is stated as follows:

"Generally, however, the court has a very broad discretion in the selection of guardians, and may appoint such person or persons as it deems most suitable and proper.  The court is not bound to award letters to one who petitions therefor, or to a relative, or spouse."

In conducting the hearing, the trial court was particularly careful to receive only testimony which appeared to be disinterested, several times sustaining objections to questions, the answers to which might have been influenced by prejudice.

The appointment of Mr. Neterer as guardian of the person and estate of Mrs. Mignerey will not in any way deprive appellants of their mother's society, and of course the guardian will always listen to and carefully consider suggestions which the children may care to make concerning their mother's welfare.  The children's duty towards their mother remains the same.

It cannot be held, from the record before us, that the trial court abused its discretion in refusing to appoint Mr. Mignerey as his mother's guardian.

The order appealed from is affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.